## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MANZAN KOUASSI,                    :
  Plaintiff,                       :
                                   :
vs.                               :     Civil No. 3:04CV2206
                                   :
UNIPRISE and UNITEDHEALTH         :
GROUP, INC.,                      :
  Defendants.                     :

### RULING ON THE DEFENDANTS' MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION AND FOR COSTS

This is an action for damages brought pursuant to 42 U.S.C. § 1981.  Specifically, the plaintiff, Manzan Kouassi, alleges that his former employers, Uniprise and UnitedHealth Group (collectively "UHG"), discriminated and retaliated against him on account of his race.  UHG has filed the within motion (document no.6) pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-14(1999), and the Connecticut Arbitration Statute, Conn. Gen. Stat. § 52-408 et seq., arguing that the court should issue "an order staying the proceedings in this action and compelling arbitration on all claims."  Furthermore, UHG argues that the court should order Kouassi to pay UHG "their attorneys' fees and costs incurred in bringing" the within motion.  Kouassi responds that the court should "deny each and every aspect" of UHG's motion.

For the reasons set forth below, the defendants' motion to stay and compel arbitration (document no.6) is GRANTED.  The defendants request for attorneys fees is DENIED.

The issues presented are: (1) whether Kouassi and UHG entered into a binding arbitration agreement; (2) if so, whether this action falls within the scope of the arbitration agreement; and (3) whether the court should order Kouassi to pay UHG's attorneys' fees and costs for bringing the within motion.

The court concludes: (1) Kouassi and UHG entered into a binding agreement to arbitrate all employment-related disputes; (2) this action is within the scope of the arbitration agreement; and (3) awarding attorneys' fees and costs to the defendants is not appropriate.

Accordingly, the motion to stay and compel arbitration (document no.6) is GRANTED.  The request for attorneys' fees and costs is DENIED.

## FACTS

The following undisputed facts, which the court has taken from the parties' memoranda of law and supporting documents, are relevant to the defendants' motion to stay the action and compel arbitration:

The defendant, UnitedHealth Group Inc. ("UHG"), is a company that provides healthcare management services to various employers.  The other defendant, Uniprise, is a subsidiary of UHG.

## I.    1999 Employment

On August 13, 1999, the plaintiff, Manzan Kouassi, submitted an application for a position with UHG as a quality consultant ("first application").  This first application contained a section entitled "Authorization and Acknowledgment" which stated, in relevant part:

> I understand that United HealthCare[1] has adopted alternative dispute resolution procedures, including an Employment Arbitration Policy, to resolve any dispute which may arise related to my employment or termination of employment.  I understand that arbitration is the final, exclusive and required forum for the resolution of employment related disputes which are based on a legal claim.  I agree to comply with . . . United HelathCare's Employment Arbitration Policy in any covered employment dispute with United HealthCare.

See UHG Exhibit A.  Kouassi admits that he signed this first application.

On September 9, 1999, almost one month later, UHG sent a letter to Kouassi offering him "employment with UnitedHealth Group as Quality Consultant in the Uniprise Operations Analysis & Improvement area"("first offer letter"). See UHG Exhibit B. Specifically, the letter stated in part, "[t]he UnitedHealth Group Employment Arbitration Policy is a binding contract between you and the UnitedHealth Group to resolve all employment-related disputes that are based on a legal claim through arbitration."

---

[1] UHG's memorandum in support of the within motion informs the court that in "January, 1999, United HealthCare, Inc. ("UHC") changed its name to UnitedHealth Group."

<u>See</u> UHG Exhibit B.

The first offer letter also stated that UHG had attached to the letter "summaries of the . . . Employment Arbitration Policy which [is] a condition[] of your employment."  Kouassi, however, argues that the first "offer letter was not accompanied by the 'Company's Internal Dispute and Employment Arbitration Policy Summaries.'"  In contrast, UHG maintains that it did provide Kouassi with the policy summaries.[2]

On September 20, 1999, Kouassi began working for UHG as a quality consultant.  On October 4, 1999, fourteen days later, Kouassi signed a form entitled "Acknowledgment Form for the Code of Conduct and Employee Handbook"("first acknowledgment form").  Specifically, the first acknowledgment form provided in part:

> I understand that the UnitedHealth Group Employment
> Arbitration Policy is a binding contract between
> UnitedHealth Group and me to resolve all employment-
> related disputes which are based on a legal claim
> through final and binding arbitration.  I agree to

---

[2] UHG has also submitted a copy of an arbitration policy ("the 1999 arbitration policy") to the court.  The 1999 arbitration policy provides, in relevant part:

> The [arbitration] Policy is a binding contract between UnitedHealth Group and its employees and its former employees to resolve all employment-related disputes, that are based on a legal claim through final and binding arbitration.  Arbitration is the exclusive forum for the resolution of such disputes . . . . . A dispute is based on a legal claim and is subject to this Policy if it arises or involves a claim under any federal . . . statute . . . regarding or relating to employment discrimination . . . or termination including, but not limited to, the following: Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991 . . . and all applicable amendments . . .

<u>See</u> UHG Exhibit B2.  Kouassi also maintains that UHG never gave him this document.

submit all employment-related disputes based on [a]
legal claim to arbitration . . .

See UHG Exhibit C.  Although Kouassi admits that he signed this

acknowledgment form, Kouassi argues "no one explained the

Employment Arbitration Policy to him."  In contrast, UHG argues

that it "explained [the arbitration policy] to [Kouassi] as part

of UHG's standard new hire orientation program . . ."

In November 2001, a little over two years after Kouassi

began work at UHG, UHG terminated Kouassi.

## II.  2002 Employment

On January 17, 2002, two months after UHG terminated

Kouassi, Kouassi signed an application for another position at

UHG as senior financial analyst ("second application").  Like the

first application, this second application also included a

section entitled "Authorization and Acknowledgment," which

stated, in pertinent part:

> I understand that UnitedHealth Group has adopted
> alternative dispute resolution procedures, including an
> Employment Arbitration Policy, to resolve any dispute
> which may arise related to my employment or termination
> of employment.  I understand that arbitration is the
> exclusive forum for the resolution of employment
> related disputes which are based on a legal claim and
> that arbitration decisions are final and binding upon
> both myself and UnitedHealth Group.  I agree to comply
> with . . . UnitedHealth Group's Employment Arbitration
> Policy in any covered employment dispute with
> UnitedHealth Group.

See UHG Exhibit D.  Kouassi admits that he signed this

application.

On January 17, 2002, in a letter dated the same day, UHG offered Kouassi a position as senior financial analyst("second offer letter").  This second offer letter stated in part, "[t]he UnitedHealth Group Employment Arbitration Policy is a binding contract between you and UnitedHealth Group to resolve all employment-related disputes that are based on a legal claim through arbitration."

Like the first offer letter, this second offer letter stated that UHG had attached to the letter "summaries of the UnitedHealth Group . . . Employment Arbitration Policy, which [is a] condition of your employment."  Kouassi, however, argues that "the Company's Internal Dispute Resolution and Employment Arbitration Policy Summaries did not accompany the letter . . ."  UHG argues that it "provided [Kouassi with] the Company's latest Internal Dispute and Employment Arbitration Policy summaries."[3]

---

[3] UHG has also submitted a copy of the 2002 arbitration policy to the court as UHG Exhibit G.  The 2002 arbitration policy provides in relevant part:

> A dispute is based on a legal claim and is subject to this Policy if it arises from or involves a claim under any federal . . . statute . . . regarding or relating to employment discrimination . . . or termination of employment, including, but not limited to, the following: Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991 . . . and all applicable amendments . . . .
>
> The arbitrator will be bound by the applicable law of the jurisdiction under which the dispute arises.  This Policy covers any dispute subject to arbitration which is brought on or after the applicable effective date, as set forth in Section E of this Policy, even if the alleged act or omission occurred prior to the applicable effective date.

See Exhibit G.  Kouassi, however, "denies that he received the Employment Arbitration Policy as shown in Defendant's Exhibit G."

6

On January 28, 2002, UHG asserts that Kouassi began work as a senior financial analyst.  However, Kouassi maintains that he did not begin work until one week later on February 4, 2002.

It is undisputed that on February 4, 2002, Kouassi signed an acknowledgment form ("second acknowledgment form").  See UHG Exhibit F.  Similar to the first acknowledgment form that Kouassi signed in 1999, this second acknowledgment form stated that the,

> Employment Arbitration Policy is a binding contract between UnitedHealth Group and me to resolve all employment-related disputes which are based on a legal claim through final and binding arbitration.  I agree to submit all employment-related disputes on legal claim[s] to arbitration . . .

See UHG Exhibit F.

In July 2004, UHG terminated Kouassi.  UHG maintains that UHG "eliminated Mr. Kouassi's Senior Financial Analyst position because the project he was working on was concluding . . ." Kouassi "disputes that his position was or could be eliminated." Instead, Kouassi alleges that UHG "continuously den[ied Kouassi] equal pay and advancement opportunities" during his employment and "terminat[ed] him . . . on the basis of race, as exemplified by ethnicity, skin color, accent and national origin."

On December 30, 2004, Kouassi filed this action pursuant to 42 U.S.C. § 1981 alleging that UHG discriminated against him on the basis of his race.  On January 14, 2005, UHG filed the within motion to stay the proceedings and compel arbitration.

7

**STANDARD**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-14 (1999), "reflects a 'liberal federal policy favoring arbitration agreements' as a means of settling disputes."[4] Topf v. Warnaco, Inc., 942 F. Supp. 762, 765 (D. Conn. 1996)(citing Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). See also Fahim v. Cigna Invs., Inc., 1998 WL 1967944, at *1 (D. Conn. Sept. 10, 1998).  Pursuant to section 4 of the FAA, "[a] party aggrieved by the alleged . . . refusal of another to arbitrate under a written agreement for arbitration may petition" a district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4(1999).[5]

_____

[4] Specifically, section 2 of the FAA, 9 U.S.C. § 2(1999), provides, in relevant part:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2(1999).

[5] Furthermore, 9 U.S.C. § 4(1999) provides:

> If no jury trial shall be demanded by the party alleged to be in default . . . the court shall hear and determine such issue. Where such issue is raised, the party alleged to be in default may . . . on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose.  If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed.  If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding

In determining whether to grant a stay of proceedings and compel arbitration, the court must consider four issues: (1) "whether the parties have made an agreement to arbitrate"; (2) "the scope of the agreement" to arbitrate; (3) "if federal statutory claims are involved, whether they are non-arbitrable"; and (4) "whether to separate any arbitrable claims from those which are non-arbitrable." Topf v. Warnaco, Inc., 942 F. Supp. 762, 765 (D. Conn. 1996). See also JLM Indus., Inc., et al. v. Stolt-Nielsen SA, et al., 387 F.3d 163, 169 (2d Cir. 2004); Genesco, Inc. v. Kakiuchi & Co., Ltd., 815 F.2d 840, 844 (2d Cir. 1987). Here, the principle issues of concern are: (1) whether the parties entered into a valid agreement to arbitrate, and if so, (2) whether the Kouassi's § 1981 cause of action falls within the scope of the agreement to arbitrate.

"In the context of motions to compel arbitration brought under the Federal Arbitration Act . . . 9 U.S.C. § 4 (2000), the court applies a standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003). Specifically, the court must decide whether "there is an issue of fact as to the making of the agreement for arbitration" because if there is "then a trial is necessary" on

---

thereunder, the court shall make an order summarily directing the parties to proceed with arbitration in accordance with the terms thereof.

9 U.S.C. § 4(1999).

the issue of whether there was an agreement to arbitrate. Id. See also Comfort v. Mariner Health Care, Inc., 2005 WL 977062, at *1 (D. Conn. Apr. 26, 2005)).

If the court concludes that (1) the parties entered into an enforceable arbitration agreement, and (2) the claim is within the scope of the arbitration agreement, then pursuant to section 4 of the FAA the "court is required to grant a petition to compel arbitration . . ." Doctor's Assocs., Inc. v. Distajo, 66 F.3d 438, 454 (2d Cir. 1995). See 9 U.S.C. § 4 (1999).[6]   The court must also "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . ." 9 U.S.C. § 3(1999).[7]

---

[7] Section 3 of the FAA, 9 U.S.C. § 3(1999), provides in relevant part:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall* on application of one of the parties *stay the trial of the action until such arbitration has been had* in accordance with the terms of the agreement . . .

9 U.S.C. § 3(1999).

**DISCUSSION**

**I.   Validity of Arbitration Agreement**

UHG first argues that Kouassi and UHG entered into an enforceable agreement to arbitrate.  Specifically, UHG argues that Kouassi "expressly acknowledged his agreement to submit any employment-related disputes to arbitration."

Kouassi responds that he did not enter into an enforceable arbitration agreement with UHG because (1) the arbitration agreement is both procedurally and substantively unconscionable, and (2) the arbitration agreement lacked consideration.

Section 2 of the FAA provides that arbitration agreements are enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2(1999).  Therefore to determine whether the parties entered into an enforceable agreement to arbitrate, the court must apply Connecticut contract law.  See Mehler v. Terminex Int'l Co., 205 F.3d 44, 48 (2d Cir. 2000); Topf v. Warnaco, Inc., 942 F. Supp. 762, 765 (D. Conn. 1996).

**A.   Procedural Unconscionability**

Kouassi first argues that the arbitration agreement is procedurally unconscionable.  Specifically, Kouassi argues that the arbitration agreement is procedurally unconscionable because (1) UHG failed "to disclose the policy itself at the time of the

11

contract," (2) there was an inequality in bargaining power between Kouassi and UHG, and (3) UHG failed to explain the arbitration policy to Kouassi.  UHG responds the arbitration agreement is not procedurally unconscionable.  The court agrees with UHG.

The Connecticut supreme court has recognized that the "classic definition of an unconscionable contract is one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." Smith, et al. v. Mitsubishi Motors Credit of Amer., et al., 247 Conn. 342, 349 (1998)(internal quotation marks omitted). Unconscionability is a question of law for the court to decide "on a case-by-case basis, taking into account all of the relevant facts and circumstances." Cheshire Mortg. Serv., Inc. v. Montes, 223 Conn. 80, 87 (1992).

The Connecticut supreme court recognizes two types of unconscionability: procedural and substantive unconscionability.[8] Procedural unconscionability "refers to the process by which an agreement is reached and the form of the agreement . . ." 21 Williston on Contracts § 57:15 (4th ed. 2004).  The doctrine against procedural unconscionability is "intended to prevent unfair surprise." Smith, et al. v. Mitsubishi Motors Credit of

---

[8] The court will address substantive unconscionability in section II B ("Substantive Unconscionability").

Amer., et al., 247 Conn. 342, 349 (1998).

The Connecticut appellate court has recognized that procedural "unconscionability cases arise in the context of some kind of misleading conduct that comes close to being fraudulent." Shoreline Communic., Inc. v. Norwich Taxi, LLC, 70 Conn.App. 60, 70 (2002). "Under the law of procedural unconscionability, such contracts may be voidable by an innocent party who has been misled about the advisability of entering into a contract." Shoreline Communic., Inc. v. Norwich Taxi, LLC, 70 Conn.App. 60, 70 (2002)(citing Restatement (Second) of Contracts § 153 (1981)).

Under the Connecticut test for procedural unconscionability, the issue is whether the contract is "so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract."[9] Cheshire Mortg. Serv., Inc. v. Montes, 223 Conn. 80, 87 (1992)(quoting Hamm v. Taylore, 180 Conn 491, 495-96 (1980)).

### 1.   Disclosure

Kouassi first argues that the arbitration agreement is procedurally unconscionable because UHG never provided him with a

---

[9] This test relies heavily on the Uniform Commercial Code § 2-302, which, as the Restatement (Second) of Contracts recognizes, "is literally inapplicable to contracts not involving the sale of goods, but it has proven very influential in non-sales cases." Restatement (Second) of Contracts § 208 cmt.a.(1981). Nonetheless, "[i]t has many times been used either by analogy or because it was felt to embody a generally accepted social attitude of fairness going beyond its statutory application to sales of goods." Restatement (Second) of Contracts § 208 cmt.a.(1981).

copy of the arbitration policy summaries or the full arbitration
policies.  Specifically, Kouassi argues that UHG's failure to
"disclose the contents of the arbitration policy" amounted to
"[w]ithholding of the material facts of the contract."

UHG argues that it did provide Kouassi with summaries of the
arbitration policy and the full arbitration policies.  The court
concludes that even assuming UHG did not provide Kouassi with the
arbitration summaries or arbitration policies, Kouassi and UHG
entered into an agreement to arbitrate all employment-related
disputes based on the arbitration clauses in the applications,
offer letters, and acknowledgment forms.

In Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144 (2d
Cir. 2004),[10] the Second Circuit Court of Appeals addressed a
case in which an employee beginning his employment with a large
financial institution signed a form containing an arbitration
clause.  Specifically, the form stated, in relevant part: "I
agree to arbitrate any dispute, claim or controversy that may
arise between me and my firm . . . that is required to be
arbitrated under the rules . . ." Gold v. Deutsche
Aktiengesellschaft, 365 F.3d 144, 146 (2d Cir. 2004).  Although
the employee admitted that he signed the form, the employee

---

[10] In Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144 (2d
Cir. 2004), the Second Circuit applied New York contract law.  The
court recognizes that it must apply Connecticut contract law here.
However, the court has not found case law that indicates that the
contract principles underlying the Second Circuit's decision in Gold
differ materially from Connecticut contract law.

argued that the arbitration agreement was unenforceable because the employer never provided him with the rules governing arbitration.

Despite the employee's argument that his employer never provided him with the rules governing arbitration, the Second Circuit upheld the district court's order compelling arbitration. Specifically, the court held, that even though the employee "allegedly was not given" the governing "rules referred to in the arbitration clause, the arbitration clause was broad and plain and put [the employee] on notice that 'any dispute, claim or controversy that may arise between [him] and [his] firm' could be arbitrable." Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 150 (2d Cir. 2004).

The Second Circuit reasoned that "in the absence of fraud or other wrongful act on the part of the other contracting party, a party 'who signs or accepts a written contract . . . is conclusively presumed to know its contents and assent to them . . .'" Id. at 149 (quoting Metzger v. Aetna Ins. Co., 227 N.Y. 411, 416 (1920)).  Furthermore, where an employee has "questions about the arbitration clause or the rules . . . the burden is upon [the employee] to have his concerns addressed before signing" a form acknowledging his acceptance of the arbitration policy. Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 149 (2d Cir. 2004).

The Second Circuit noted that although "it would have made sense" for the employer in Gold to "have explained the form and

15

have provided [the employee with] the . . . rules that were incorporated with reference," the court did "not find on this record that the failure to do so renders the arbitration clause invalid." <u>Gold v. Deutsche Aktiengesellschaft</u>, 365 F.3d 144, 150 (2d Cir. 2004). <u>See also</u> <u>Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 170 F.3d 1, 23 (1st Cir. 1999)(Wellford, J. dissenting)(cited with approval by the Second Circuit in <u>Gold v. Deutsche Aktiengesellschaft</u>, 365 F.3d 144 (2d Cir. 2004)).

Similarly, in <u>Tarulli v. Circuit City Stores, Inc.</u>, 333 F. Supp. 2d 151 (D. Conn. 2004), an employee argued, as Kouassi does here, that the district court could not compel arbitration because "there was procedural unconscionability because [the employer] witheld a key component of the Agreement, a copy of the [arbitration] Rules, from the plaintiff." <u>Tarulli v. Circuit City Stores, Inc.</u>, 333 F. Supp. 2d 151, 157 (D. Conn. 2004).  The court held that even if the employer did not provide the employee with a copy of the arbitration rules, the arbitration agreement was still not procedurally unconscionable. <u>Id.</u>

Even assuming that UHG did not provide Kouassi with the summaries or policies, Kouassi entered into an agreement to arbitrate all employment-related disputes with UHG based on the arbitration clauses in the applications, offer letters, and acknowledgment forms.  Specifically, Kouassi admits that he reviewed, without objection, six documents which clearly indicated that Kouassi and UHG would both be bound by an

agreement to arbitrate all employment-related disputes.

First, Kouassi admits that he signed two applications, each of which contained an arbitration authorization and acknowledgment clause.  Specifically, the applications stated, "I understand that arbitration is the exclusive forum for the resolution of employment related disputes which are based on a legal claim . . ."  Furthermore, the application stated, "I agree to comply with . . . UnitedHealth Group's Employment Arbitration Policy in any covered employment dispute with UnitedHealth Group."

Second, Kouassi also admits that he received and reviewed two offer letters, both of which clearly stated that UHG's arbitration policy was "a binding contract between you and United Health Group to resolve all employment-related disputes that are based on a legal claim through arbitration."  Kouassi does not argue that he ever informed UHG that the arbitration policy summaries were missing, nor does he argue that he ever requested a copy of the arbitration policies.

Third, Kouassi admits that he signed two acknowledgment forms after he began work at UHG.  Both acknowledgment forms stated the parties agreed "to resolve all employment-related disputes which are based on a legal claim through final and binding arbitration."  Both acknowledgment forms also stated that the agreement to arbitrate was a "binding contract."

17

Even assuming UHG never gave Kouassi the arbitration policy summaries or policies, Kouassi and UHG entered into an agreement to arbitrate all employment-related disputes.  The two applications, two offer letters, and two acknowledgment forms contained clauses "broad and plain" enough to "put [Kouassi] on notice" that all employment-related disputes with UHG would be subject to arbitration. Gold v. Deutsche Akiengesellschaft, 365 F.3d 144, 150 (2d Cir. 2004).

## 2. Bargaining Power

Kouassi also argues that the arbitration agreement is unconscionable because "[t]his is a situation where one party, having all of the economic power, has attempted to impose a contract on another, economically weak party."

The Restatement (Second) of Contracts § 208 (1981) explains that a "bargain is not unconscionable merely because the parties to it are unequal in bargaining position, nor even because the inequality results in an allocation of risks to the weaker party." Id. at cmt.d.[11]  Similarly, in Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144 (2d Cir. 2004), the Second Circuit noted that "[m]ere inequality in bargaining power between employers and employees is not alone sufficient to hold arbitration agreements unenforceable." Id. at 150 (quoting

---

[11] The Connecticut supreme court has cited to the Restatement (Second) of Contracts § 208 (1981). See e.g. Gibson v. Capano, 241 Conn. 725, 731 (1997).

Desiderio v. Nat'l Assoc. of Secs. Dealers, Inc., 191 F.3d 198 (2d Cir. 1999)). See also Tarulli v. Circuit City Stores, Inc., 333 F. Supp. 2d 151, 156 (S.D.N.Y. 2004).  Furthermore, "conditioning employment on the acceptance of an agreement to arbitrate disputes, including those arising under civil rights laws, is not itself unlawfully coercive." Tarulli v. Circuit City Stores, Inc., 333 F. Supp. 2d 151, 157 (S.D.N.Y. 2004)(quoting Williams v. Parkell Prods., Inc., 91 Fed. Appx. 707, 708 (2d Cir. 2003)).

Here there is no indication that the alleged inequality in "economic power" between UHG and Kouassi resulted in a hiring process that deprived Kouassi of a meaningful choice about whether to agree to arbitrate.  Rather, UHG stated clearly in the application and offer letter that a condition of any potential employment with UHG would be that both employer and employee would arbitrate all employment-related disputes.  Kouassi decided to accept employment and explicitly accepted arbitration as a condition of such employment by signing the application and beginning employment after reviewing the offer letter. Therefore, the court concludes that the arbitration agreement is not procedurally unconscionable merely because of the parties were allegedly in an "unequal bargaining position." Restatement (Second) Contracts § 208 (1981).

### 3.   Failure to Explain

Kouassi next argues that the agreement to arbitrate is unenforceable because "no one explained the Employment Arbitration Policy" to him.  UHG responds that it "explained [the arbitration policy] to [Kouassi] as part of UHG's standard new hire orientation program . . ."  Regardless of whether UHG explained the arbitration policy to Kouassi, the court concludes that the agreement is not procedurally unconscionable on this basis.

In Topf v. Warnaco, Inc., 942 F. Supp. 762 (D. Conn. 1996), the plaintiff argued that an arbitration agreement was unenforceable because the plaintiff "was never informed that the handbook contained an arbitration agreement, and that he was never told that his remedies were limited by the arbitration clause." Topf v. Warnaco, Inc., 942 F. Supp. 762, 769 (D. Conn. 1996).  In Topf, the district court applied Connecticut law and concluded that the agreement to arbitrate was still enforceable.  Specifically, the court reasoned that "parties dealing at arms-length" do not have a "duty to explain to each other the terms of a written contract." Id. at 769 (quoting Cohen v. Wedbush, Noble, Cooke, Inc., 841 F.2d 282 (9th Cir. 1988)).

Similarly, the Connecticut supreme court has stated that the "principles of unconscionability" do not "supersede . . . the duty of a contracting party to read the terms of an agreement or else be deemed to have notice of the terms." Smith, et al. v.

Mitsubishi Motors Credit of Amer., et al., 247 Conn. 342, 351-52 (1998). See also Forshaw, et al. v. S.C.I. Conn. Funeral Servs., 2002 WL 2005869, at *2 (Conn. Super. July 29, 2002)(holding defendants' failure to explain the contract to the plaintiff does not make "the contract . . . procedurally unconscionable").

Here, even assuming that UHG did not explain the arbitration policy to Kouassi, such a failure does make the arbitration agreement procedurally unconscionable. Kouassi and UHG were parties dealing at arms length, and as such, UHG did not have a duty to explain the arbitration agreement to Kouassi. Kouassi has not alleged that he did not have sufficient time to review the arbitration clauses in his applications, offer letters, or acknowledgment forms. Accordingly, the court concludes that the agreement to arbitrate was not procedurally unconscionable on this basis.

### B.   Substantive Unconscionability

Kouassi next argues that the arbitration agreement is substantively unconscionable. Specifically, Kouassi argues that the contract is substantively unconscionable because: (1) the arbitration policy fails "to disclose that it . . . appl[ies] after employment is terminated"; (2) the arbitration policy fails "to give notice of the loss of the constitutional right to a jury trial"; (3) the arbitration policy "transfer[s] . . . [the] costs of litigation in certain cases, the shifting of cost burdens for stenographic attendance at the hearing, from what would be the

case in a court trial"; (4) the arbitration policy provides that "arbitration [may] proceed in the absence of the employee;" and (5) the arbitration policy provides for the "the unilateral power of the Defendant Employer to alter the terms of the EAP with or without notice" to the employee.

UHG, in contrast, argues that the contract is not substantively unconscionable.  The court agrees with UHG.

Substantive unconscionability refers to contracts that are so "unreasonably or grossly favorable to one side and to which the disfavored party does not assent." 21 Williston on Contracts § 57:15 (4th ed. 2004).  According to the Connecticut supreme court, the doctrine against substantive unconscionability is "intended to prevent oppression." Smith, et al. v. Mitsubishi Motors Credit of Amer., et al., 247 Conn. 342, 349 (1998).

While Kouassi argues that certain terms of arbitration policy as set forth in the full arbitration policy are unconscionable, the court's review at this stage is limited "to the gateway issue of whether there is a valid arbitration agreement." Baldeo v. Darden Rest., Inc., 2005 WL 44703, at *7 (E.D.N.Y. Jan. 11, 2005)(noting "the validity and meaning of specific provisions in the arbitration agreement can be decided by the arbitrator").  The court must therefore determine pursuant to Connecticut law whether arbitration agreement *as a whole* is "so-one sided as to be unconscionable as a matter of law." Cheshire Mortg. Serv., Inc. v. Montes, 223 Conn. 80, 94 (1992).

For the reasons set forth below, the court concludes that the arbitration agreement as a whole is not unconscionable.

The Restatement (Second) of Contracts § 208 cmt.e.(1981) states that "[p]articular terms [of a contract] may be unconscionable whether or not the contract as a whole is unconscionable." Id.  Whether particular *terms* of the arbitration policy are unconscionable is a question for the arbitrator to decide, not the court. Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452 (2003); Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002)(noting "[p]rocedrual questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator to decide"); Tarulli v. Circuit City Stores, Inc., 333 F. Supp. 2d 151, 158 (S.D.N.Y. 2004); Ciago v. Ameriquest Mortgage Co., 295 F. Supp. 2d 324, 330 (S.D.N.Y. 2003); Stewart v. Paul, Hastings, Janofsky & Walker, LLP, 201 F. Supp. 2d 291, 292 (S.D.N.Y. 2002).

## 1.   Waiver of Jury Trial

Kouassi next argues that the arbitration policy is unconscionable because it fails "to give notice of the loss of the constitutional right to a jury trial."  UHG responds that "Connecticut law is well-settled that arbitration agreements do not need a specific waiver of the right to jury trial."

Kouassi cites to a New Jersey supreme court case, Martindale v. Sandvik, Inc., 173 N.J. 76 (2002), for the proposition that an employer must provide an employee with notice of a "clear and

23

unambiguous waiver of a right to jury trial."

In contrast, in <u>Powers v. United HealthCare</u>, 2001 WL 291148, (Conn. Super. May 2, 2001), a Connecticut superior court held that when there is a "valid agreement to arbitrate and no allegation of fraud it was not necessary to specifically waive the right to a jury trial in order to make the agreement effective." <u>Powers v. United HealthCare</u>, 2001 WL 291148, at *3 (Conn. Super. May 2, 2001). <u>See also</u> <u>Desiderio v. Nat'l Assoc. of Secs. Dealers, Inc.</u>, 191 F.3d 198, 205(2d Cir. 1999)(compelling arbitration of Title VII claim noting "it is untenable to contend that compulsory arbitration conflicts with [Title VII]'s provision for the right to jury trial"); <u>Ciago v. Ameriquest Mortgage Co.</u>, 295 F. Supp. 2d 324, 331 (S.D.N.Y. 2003)(rejecting plaintiff's argument that arbitration agreement is void as against public policy for its failure to specifically inform her of her waiver of her right to jury trial; noting in the Second Circuit "implicit waiver [of the right to jury trial] will not invalidate an arbitration agreement").

Here, the waiver of the right to trial by jury was implicit in the agreement to arbitrate all employment-related disputes. The court concludes that the failure to specifically state in the arbitration clauses that an employee is by nature of the agreement waiving the right to a jury trial does not amount to substantive unconscionability.  Accordingly, the agreement as a whole is not substantively unconscionable on this basis.

## 2.    Application After Termination

Kouassi next argues that the arbitration agreement is unconscionable because UHG did not disclose that the arbitration agreement "seeks to apply after employment is terminated." Kouassi, however, has not cited an legal support for his argument.

The court concludes that the failure of the applications, offer letters, and acknowledgment forms to specifically state that the arbitration agreement applied after termination does not make the arbitration agreement as a whole "unreasonably or grossly favorable to one side." 21 Williston on Contracts § 57:15 (4th ed. 2004).  Connecticut courts have enforced arbitration agreements in cases in which an employee has brought an action against an employer after termination where the arbitration clause does not specifically state that it applies after termination. See e.g. Sood v. Comprehensive Pain & Headache Treatment Ctrs., LLC, et al., 2004 WL 3106047 (Super. Ct. Dec. 14, 2005).

Furthermore, the applications' arbitration clauses, which Kouassi admits that he signed, did state that the arbitration agreement would apply after termination.  Specifically, the clause stated that the parties agreed to "resolve any dispute which may arise related to my employment or *termination* of employment" through arbitration (emphasis added).  Accordingly, the agreement as a whole is not unconscionable on this basis.

25

### 3.   Arbitration in Absence of Employee, Cost Transfers, and Unilateral Power to Alter Terms

Kouassi also argues that the arbitration agreement is substantively unconscionable because the arbitration policy provides for "the shifting of cost burdens for stenographic attendance at the hearing . . . the ability of the arbitration to proceed in the absence of the employee, and the unilateral power of [UHG] to alter the terms of the [arbitration policy] with or without notice."

As noted above, the court's review at this stage is limited "to the gateway issue of whether there is a valid arbitration agreement." Baldeo v. Darden Rest., Inc., 2005 WL 44703, at *7 (E.D.N.Y. Jan. 11, 2005)(noting "the validity and meaning of specific provisions in the arbitration agreement can be decided by the arbitrator"). The court concludes that none of the above terms of the arbitration policy are so "unreasonably or grossly favorable" to UHG as to make the arbitration agreement as a whole substantively unconscionable. The court notes, however, that Kouassi may argue before the arbitrator that these terms are unconscionable and the arbitrator in turn may decide that such terms are not binding during arbitration. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) (noting "[p]rocedrual questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator to decide").

26

### C.   Consideration

Kouassi next argues that the arbitration agreement is invalid for lack of consideration because UHG "withheld the presentation of the acknowledgment form" until after he began working at UHG.  UHG responds that UHG gave Kouassi "adequate consideration for his agreement to arbitrate . . . because he signed the Agreement almost immediately after he accepted his job with UHG."

In Torosyan v. Boehringer Ingelheim Pharm., Inc., 234 Conn. 1 (1995), the Connecticut supreme court addressed an employer's attempt to present an employee with changes to the conditions of his employment after he had been working for over two years.  The issue presented was whether the employee's continued work after receiving notice of the changed terms constituted acceptance of and consideration for the changed terms.

The court focused on whether the proposed changes "substantially interfered" with the employee's legitimate expectations about the terms of his employment.  The court held that when an employer presents an employee with new terms that substantially interfere with an employee's legitimate expectations, "the fact that an employee continues working . . . may be relevant to determining whether he . . . consented to the new contract," but an employee's continued work "cannot itself mandate a finding of consent." Torosyan v. Boehringer Ingelheim Pharm., Inc., 234 Conn. 1, 18 (1995).

27

In a footnote, the court specifically noted that it was not deciding the issue of whether employees who have "notice of the new terms accept[] those terms as a matter of law by continuing to work" where the new terms "*do[] not materially interfere* with the employee's legitimate expectations about the terms of [their] . . . employment . . ." <u>Torosyan v. Boehringer Ingelheim Pharm., Inc.</u>, 234 Conn. 1, 19 n.7 (1995)(emphasis added).

In <u>Phillips v. Cigna Invs., Inc.</u>, 27 F. Supp. 2d 345, 353 (D. Conn. 1998), a district court applying Connecticut contract law in the arbitration context, addressed the validity of arbitration policy that an employer presented to an employee over three months after she began working.  Specifically, the court noted that following the Connecticut supreme court in <u>Torosyan v. Boehringer Ingelheim Pharm., Inc.</u>, 234 Conn. 1(1995), "[w]hether the plaintiff's continued employment . . . was sufficient to constitute an acceptance of this change in policy depends in large measure on whether the plaintiff had *a 'legitimate expectation'* that [she] could litigate . . . . statutory employment claims in federal court." <u>Phillips v. Cigna Invs., Inc.</u>, 27 F. Supp. 2d 345, 353 (D. Conn. 1998)(emphasis added).

The district court in <u>Phillips v. Cigna Invs., Inc.</u>, 27 F. Supp. 2d 345, 353 (D. Conn. 1998) concluded that prior to the employer presenting the employee with the arbitration policy, the employee had a "'legitimate expectation' that she would be able to enforce her rights under Title VII in federal court."  <u>Id.</u> at

358.  The court therefore held that "[u]nder <u>Torosyan</u>, the mere continuation of plaintiff's employment does not constitute acceptance of this new arbitration policy . . ." <u>Phillips v. Cigna Invs., Inc.,</u> 27 F. Supp. 2d 345, 358-59 (D. Conn. 1998).

Here, in contrast to <u>Phillips v. Cigna Invs., Inc.,</u> 27 F. Supp. 2d 345, 353 (D. Conn. 1998), the court concludes that Kouassi never had a legitimate expectation that he could litigate his statutory or constitutional employment claims in federal court.  The applications, which Kouassi admits he signed, and the offer letters, which Kouassi admits he received, informed Kouassi from early on that all employment related disputes with UHG would be subject to arbitration.  Thus the acknowledgment form's arbitration clause that UHG presented to him after he began work did not change Kouassi's legitimate expectations with regard to arbitration.

Because the acknowledgment form did not change Kouassi's legitimate expectations regarding arbitration of employment-related disputes, the court concludes that Kouassi's continued work at UHG after signing the acknowledgment form constituted acceptance and sufficient consideration for an agreement to arbitrate all employment-related disputes. <u>See also</u>, <u>Comfort v. Mariner Health Care, Inc., et al.,</u> 2005 WL 977062 at *2 (D. Conn. Apr. 26, 2005)(holding "[w]here an individual's employment is at-will, continued employment is sufficient consideration to render an arbitration agreement binding"); <u>Fahim v. Cigna Invs., Inc.,</u>

1998 WL 1967944, at *3 (D. Conn. 1998)(holding "continued employment [after receiving the arbitration policy] and the mutuality of the obligation to arbitrate is sufficient consideration"); Topf v. Warnaco, Inc., 942 F. Supp. 762, 767 n.2 (D. Conn. 1996)(holding "[m]utual promises to arbitrate are sufficient to support an arbitration agreement").

## II.        Scope of Arbitration Policy

Having concluded that a binding and enforceable contract to arbitrate existed between Kouassi and UHG, the court must next consider whether Kouassi's 42 U.S.C. § 1981 cause of action falls within the scope of the arbitration contract.

UHG argues that Kouassi's § 1981 cause of action "is squarely within the scope" of the arbitration agreement, and the court therefore "must stay these proceedings pending resolution of Mr. Kouassi's claims through arbitration."  Kouassi responds that this action is not within the scope of the arbitration policy because: (1) the policy "applies on its face only to situations where the employee is still employed by Uniprise," and (2) the policy does not apply to the assertion of "rights protected by the United States Constitution and statutes enforcing constitutional rights."

In considering an arbitration policy's scope, "courts read arbitration clauses broadly, with 'any doubts concerning the scope of arbitrable issues [being] resolved in favor of arbitration.'" Topf v. Warnaco, Inc., 942 F. Supp. 762, 769 (D.

Conn. 1996)(quoting <u>Moses H. Cone Mem'l. Hosp.</u>, 460 U.S. 1, 24-25(1983)). <u>See also</u> <u>JLM Indust., Inc., et al v. Stolt-Nielsen SA, et al.</u>, 387 F.3d 163, 171 (2d Cir. 2004); <u>Phillips v. Cigna Invs., Inc.</u>, 27 F. Supp. 2d 345, 348 (D. Conn. 1998).

The Second Circuit court of appeals recently stated that in deciding whether a cause of action falls within the scope of a given arbitration agreement, "a court should classify the particular clause as either broad or narrow." <u>JLM Indus., Inc., et al. v. Stolt-Nielsen SA, et al.</u>, 387 F.3d 163, 172(2d Cir. 2004)(quoting <u>Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.</u>, 252 F.3d 218, 224 (2d Cir. 2001)).

If the court determines that the arbitration clause "is broad, there arises a presumption of arbitrability . . ." <u>JLM Indus., Inc., et al. v. Stolt-Nielsen SA, et al.</u>, 387 F.3d 163, 172(2d Cir. 2004)(quoting <u>Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.</u>, 252 F.3d 218, 224 (2d Cir. 2001)). In other words, "the court must compel arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" <u>Mehler v. Terminex Int'l Co.</u>, 205 F.3d 44 (2d Cir. 2000)(emphasis added)(quoting in part <u>Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.</u>, 58 F.3d 16, 19 (2d Cir. 1995)).

### A.    The Arbitration Clause is Broad

Courts in the Second Circuit have consistently held that the language "arising out of" is indicative of a broad arbitration clause. See Big Y Foods, Inc. v. Conn. Props. Tri-Town Plaza, LLC, 985 F. Supp. 232 (D. Conn. 1998)(noting arbitration clause uses "typically broad language that makes arbitrable all disputes 'arising out of' or 'related to' the contract or its breach"(quoting WorldCrisa v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997)).  For example, in Mehler v. Terminex Int'l Co., 205 F.3d 44 (2d Cir. 2000), the Second Circuit held that a clause providing for arbitration of "any controversy or claim between [the parties] arising out of or relating to" an agreement was a "classically broad" arbitration clause. Id. at 49.  See also Oldroyd v. Elmira Savings Bank, 134 F.3d 72, 76 (2d Cir. 1998)(holding that an arbitration that "[a]ny dispute, controversy or claim arising under or in connection with this [employment] Agreement" be subject to arbitration was a "prototypical broad arbitration provision").

Here, the arbitration clauses employed classically broad language.  Both applications stated that the parties agreed "to resolve any dispute which *may arise related to* my employment or termination" through arbitration (emphasis added).  Similarly, the offer letters stated that the parties agreed to "resolve *all* employment-related disputes that are based on a legal claim" through arbitration (emphasis added).  The acknowledgment forms

stated that the parties agree to "resolve *all* employment-related disputes which are based on a legal claim" through arbitration (emphasis added).

Kouassi, however, argues that the arbitration agreement "applies on its face only to situations where the employee is still employed by Uniprise." No such limitation exists in the language of the arbitration clauses. Given the federal policy encouraging broad reading of arbitration agreements, the court will not read such a limitation into the plain language of the clauses.

## B.   Presumption of Arbitrability and Positive Assurances Standard

Because the language of the arbitration clauses here is broad, Kouassi's § 1981 claim is "presumptively within the scope of the arbitration clause[s]." Oldroyd v. Elmira Savings Bank, 134 F.3d 72, 77 (2d Cir. 1998). The court concludes that the language of the arbitration clauses is "sufficiently broad to encompass" Kouassi's § 1981 discrimination claim. Oldroyd v. Elmira Savings Bank, 134 F.3d 72, 77 (2d Cir. 1998).

In the complaint, Kouassi alleges that during his employment UHG "continuously den[ied Kouassi] equal pay and advancement opportunities" and then "terminat[ed] him . . . on the basis of [his] race . . ." The alleged discrimination and termination "arise related to" Kouassi's employment because the factual predicates for Kouassi's allegations arise out of his employment.

33

Therefore, Kouassi's § 1981 discrimination action is within the scope of the arbitration agreement.

Kouassi argues, however, that the arbitration agreement does not apply to the assertion of "rights protected by the United States Constitution and statutes enforcing constitutional rights."  An arbitration agreement, however, need not specifically enumerate the causes of action that it encompasses. In determining whether an action falls within the scope of an arbitration clause, the Second Circuit has held that the court must "focus on the factual allegations in the complaint rather than the legal causes of action asserted." Oldroyd v. Elmira Savings Bank, 134 F.3d 72, 77 (2d Cir. 1998).  The court has concluded that the factual allegations underlying the alleged discrimination fall within the ambit of the arbitration clause. Accordingly, Kouassi's § 1981 action is within the scope of the arbitration clause regardless of whether the clause specifically states that it applies to constitutional rights or statutes to enforce constitutional rights.

34

**III. Attorneys' Fees and Costs**

UHG argues that Kouassi "should pay defendants' attorneys fees and their costs in filing" the within motion.  Specifically, UHG argues that "[d]espite the clear evidence to the contrary, [p]laintiff's counsel has refused to consent to arbitration and has indicated his intent to challenge UHG's right to arbitration . . ."  Kouassi argues that UHG is not entitled to attorneys' fees and costs because Kouassi had "good reason . . . for maintaining that [the arbitration policy] is not binding on him." While the plaintiff's arguments did not persuade the court, the arguments were not frivolous.  Accordingly, the defendants' motion for attorneys' fees is DENIED.

**CONCLUSION**

The court concludes that (1) Kouassi and UHG entered into an enforceable agreement to arbitrate all employment-related disputes, and (2) this action is within the scope of the arbitration agreement.  Accordingly, the defendants' motion to stay the action and compel arbitration is GRANTED.  The defendants' motion for attorneys' fees, however, is DENIED.

The parties shall proceed to arbitration.  The case shall be stayed pending the outcome of the arbitration proceedings.

It is so ordered this 15th day of July, 2005 at Hartford, Connecticut.

```
            _____/s/_____
                    Alfred V. Covello
                    United States District Judge.
```